McGEE, Chief Judge.
I. Procedural and Factual Background
A jury found Flavio Velasquez-Cardenas ("Defendant")[1] guilty on 16 February 2012 of *11 the first-degree murder of Patsy Barefoot ("Ms. Barefoot"), based on both premeditation and deliberation and the felony murder rule. This Court upheld Defendant's conviction on direct appeal in State v. Velasquez-Cardenas , 228 N.C. App. 139, 746 S.E.2d 22, 2013 WL 3131252 (2013) (unpublished) (" Velasquez-Cardenas I "), and additional facts can be found in that opinion.
As recounted in Velasquez-Cardenas I , Defendant gave a statement to police admitting that he killed and sexually assaulted Ms. Barefoot in her apartment in Wake County, North Carolina, before stealing her car and credit card and driving to Florida, where he was ultimately apprehended. Id. at *1-3. In Velasquez-Cardenas I , there was testimony that the State Bureau of Investigation ("SBI") also "confirmed that the hair found in Decedent's hand was a match to Defendant's hair[.]" Id. at *2. Testifying at trial, Defendant admitted to inadvertently killing Ms. Barefoot after they engaged in consensual sex, claiming he " 'put her against the wall' in an attempt to calm her down" when she became upset that he was using cocaine in her bathroom. Id.
In April 2016, Defendant filed a motion to locate and preserve evidence and for post-conviction DNA testing pursuant to N.C. Gen. Stat. §§ 15A-268 and 269 (2017), which are sections of the DNA Database and Databank Act of 1993 (the "Act"). N.C. Gen. Stat. § 15A-266 et seq . The trial court denied Defendant's motion by order entered 26 September 2016. After reviewing the record, including Defendant's confession and the other evidence adduced at trial, the trial court concluded that Defendant had "failed to allege or establish that there [wa]s any reasonable probability that the verdict would have been more favorable to [him] had DNA testing been conducted on the evidence prior to [his] conviction." See N.C.G.S. § 15A-269(b)(2). Defendant appealed as a matter of right pursuant to N.C. Gen. Stat. § 15A-270.1 (2017), and Counsel was appointed to represent Defendant on appeal. Id . ("The defendant may appeal an order denying the defendant's motion for DNA testing under this Article, including by an interlocutory appeal. The [trial] court shall appoint counsel in accordance with rules adopted by the Office of Indigent Defense Services upon a finding of indigency."). Upon reviewing the denial of Defendant's request for the preservation and testing of DNA, Defendant's appellate counsel perfected Defendant's appeal, but determined that she was unable to identify any issue with sufficient merit to support a meaningful argument for relief. Acting consistent with the requirements set forth in Anders v. California , 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d 493 (1967), and State v. Kinch , 314 N.C. 99, 331 S.E.2d 665 (1985), Defendant's appellate counsel advised Defendant of his right to file written arguments with this Court and provided Defendant with the documents necessary for him to do so. She then filed an Anders brief with this Court stating she had been unable to find any meritorious issues for appeal, had complied with the requirements of Anders , and asked this Court to conduct an independent review of the record to determine if there were any identifiable meritorious issues therein. Defendant filed a pro se "Addendum in Support of Anders Brief" on 15 May 2017.
II. Analysis
A. Applicability of Anders
In the State's brief, it does not argue that this Court should, upon Anders review, affirm the ruling of the trial court. Instead, apparently for the first time in an appeal, the State makes the argument that the protections provided in Anders and Kinch are not available to defendants appealing orders denying post-conviction DNA-related relief pursuant to N.C.G.S. § 15A-270.1.[2]
In all prior opinions of this Court involving Anders briefs filed pursuant to an N.C.G.S. § 15A-270.1 appeal, the State has implicitly accepted the validity of the Anders procedure, and simply argued that the defendants' appellate counsel were correct in their determinations that no meritorious issues were identifiable from the trial records. See *12 State v. Riggins , --- N.C. App. ----, 809 S.E.2d 378 (2018) (unpublished); State v. Bayse , --- N.C. App. ----, 808 S.E.2d 614 (2017) (unpublished); State v. Sayre , --- N.C. App. ----, 803 S.E.2d 699 (2017) (unpublished); State v. Rios , --- N.C. App. ----, 803 S.E.2d 698 (2017) (unpublished); State v. Tapia , --- N.C. App. ----, 799 S.E.2d 909 (2017) (unpublished); State v. Castruita , --- N.C. App. ----, 798 S.E.2d 440 (2017) (unpublished); State v. Barrera , --- N.C. App. ----, 798 S.E.2d 440 (2017) (unpublished); State v. Nettles , --- N.C. App. ----, 797 S.E.2d 715 (2017) (unpublished); State v. Needham , 244 N.C. App. 778, 781 S.E.2d 532 (2016) (unpublished); State v.Harris , 238 N.C. App. 200, 768 S.E.2d 63 (2014) (unpublished); State v. Gladden , 234 N.C. App. 479, 762 S.E.2d 531 (2014) (unpublished); State v. Mickens , 233 N.C. App. 789, 759 S.E.2d 711 (2014) (unpublished); State v. Autry , 215 N.C. App. 390, 716 S.E.2d 89 (2011) (unpublished). In all of those cases, this Court has conducted the Anders review requested without questioning its duty or authority to so do, including addressing the defendants' arguments when they have filed pro se briefs in accordance with Anders and Kinch .
The State now argues that, because "there is ... no constitutional right to postconviction proceedings[,]" " '[t]here is no constitutional right to an attorney in state post-conviction proceedings.' " (Citations omitted). Relying on the United States Supreme Court's opinion in Pennsylvania v. Finley , 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed. 2d 539 (1987), the State concludes: "Thus, even when an indigent defendant has a state-created right to counsel at post-conviction, 'she has no constitutional right to insist on the Anders procedures which were designed solely to protect' the 'underlying constitutional right to appointed counsel.' Finley , 481 U.S. at 557, 107 S.Ct. 1990 [at 1994], 95 L.Ed. 2d at 547."
While we agree with the State, as discussed below, that defendants who appeal pursuant to N.C.G.S. § 15A-270.1 have no constitutional right to seek Anders review, we disagree with the clear implication of the State's argument-that this Court is prohibited from recognizing a right of Anders -type review separate from that constitutionally mandated pursuant to the Anders decision itself and its progeny.
1. Review Mandated by the United States Constitution
In Finley , the United States Supreme Court held that " Anders established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel." Finley , 481 U.S. at 555, 107 S.Ct. at 1993, 95 L.Ed. 2d at 545. The Court reasoned:
We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, a fortiori , he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.
Id. at 555, 107 S.Ct. at 1993, 95 L.Ed. 2d at 545-46. For this reason, the Court held that the protections of Anders are not constitutionally mandated in post-conviction proceedings, even when defendants have been provided access to appointed appellate counsel by statute: "[W]e reject respondent's argument that the Anders procedures should be applied to a state-created right to counsel on postconviction review just because they are applied to the right to counsel on first appeal[.]" Id . at 556, 107 S.Ct. at 1994, 95 L.Ed. 2d at 546. As explained in Finley , "[s]ince [the defendant] has no underlying constitutional right to appointed counsel in state postconviction proceedings, [he] has no constitutional right to insist on the Anders procedures which were designed solely to protect that underlying constitutional right." Id. at 557, 107 S.Ct. at 1994, 95 L.Ed. 2d at 547.
The right to counsel on appeal from an order denying post-conviction DNA testing is not of constitutional origin. It is purely *13 a creature of statute, specifically N.C.G.S. § 15A-270.1, which provides as follows:
The defendant may appeal an order denying the defendant's motion for DNA testing under this Article, including by an interlocutory appeal. The court shall appoint counsel in accordance with rules adopted by the Office of Indigent Defense Services upon a finding of indigency.
Id . For these reasons, appellate counsel representing defendants based upon the right of appeal granted pursuant to N.C.G.S. § 15A-270.1 are not constitutionally mandated to conform to the requirements established in Anders when they are unable to identify any meritorious grounds for appellate review. However, our review of this issue does not end here.
The United States Supreme Court is charged with determining what constitutes the minimum rights and protections guaranteed by the United States Constitution. States are of course free to permit, or require, procedures that afford protections beyond what is constitutionally mandated.[3] Therefore, because the General Assembly has created a general right of appeal from the denial of motions made pursuant to the Act, this Court clearly has jurisdiction to consider the request for Anders -type review made by Defendant's appellate counsel. State v. Thomsen , 369 N.C. 22, 25, 789 S.E.2d 639, 641-42 (2016) ("because the state constitution gives the General Assembly the power to define the jurisdiction of the Court of Appeals, only the General Assembly can take away the jurisdiction that it has conferred"). Absent some superseding statute, holding, or rule, this Court has the discretion to decide whether to conduct the review requested by Defendant's appellate counsel. The State directs us to no contrary authority.
2. The Authority of This Court to Recognize a Right to Anders-Type Review
The State first notes that "this Court has declined to apply Anders to civil proceedings, notwithstanding a defendant's statutory right to counsel at such proceedings."[4] The State then argues that "a motion for post-conviction DNA testing is comparable to a collateral civil action, much like a habeas petition[,]" and is therefore "not a criminal action[.]" In support, the State cites the statutory definitions of civil and criminal actions, and this Court's opinion in State v. Gardner , 227 N.C. App. 364, 742 S.E.2d 352 (2013). The State contends that in Gardner this Court applied "the general rule in civil cases to defendant's motion for post-conviction DNA testing[.]" However, we do not read Gardner as holding that actions pursuant to the Act are civil in nature. In Gardner , this Court stated that, as a general rule in civil cases, when the trial court rules on motions or enters orders ex mero motu , findings and conclusions are only required if specifically requested by a party. Id. at 370, 742 S.E.2d at 356 (citation omitted). This Court then stated: " N.C. Gen. Stat. § 15A-269 contains no requirement that the trial court make specific findings of facts, and we decline to impose such a requirement."[5] Id .
However, this Court, in an earlier opinion, introduced discussion of a defendant's right of appeal pursuant to N.C. Gen. Stat. § 15A-270.1 as follows: "In North Carolina, a defendant's right to appeal in a criminal proceeding is purely a creation of state statute. .... Generally, there is no right to appeal in a criminal case except from a conviction or upon a plea of guilty." State v. Norman , 202 N.C. App. 329, 332, 688 S.E.2d 512, 514-15 (2010) (quotation marks and citations omitted) (emphasis added); see also State v. Rios , --- N.C. App. ----, 803 S.E.2d 698 (2017) (unpublished) and State v. Carroll , --- N.C. App. ----, 797 S.E.2d 710 (2017) (unpublished) (both opinions applying N.C. R. App. P. 4(a)(2) in determining the defendants' notices of appeal from denial of motions for post-conviction DNA testing were not timely *14 filed);[6] State v. Patton , 224 N.C. App. 399, 2012 WL 6590534 (2012) (unpublished) (the defendant's oral notice of appeal given immediately after the trial court denied his motion for post-conviction DNA testing preserved his right to appeal pursuant to N.C. Gen. § 15A-270.1 );[7] State v. Brown , 170 N.C. App. 601, 605-06, 613 S.E.2d 284, 287 (2005) (emphasis added) (a case decided before the enactment of N.C.G.S. § 15A-270.1 and applying N.C. R. App. P. 4(a), holding that, because the right to appeal in criminal proceedings is a purely statutory right, no right of appeal existed from decisions of the trial court pursuant to the Act because no right of appeal was included in that section, and no "other statutes governing criminal proceedings provide a right to appeal in cases such as this one"). Appeal pursuant to N.C.G.S. § 15A-270.1 is an appeal from a criminal proceeding.
In the absence of precedent from criminal appeals, the State directs us to prior decisions of this Court in which we decided not to extend the right to Anders procedures to certain civil matters. For example, the State cites In re Harrison , 136 N.C. App. 831, 526 S.E.2d 502 (2000), an opinion in which we declined to extend the right to Anders review to parents who appeal from orders terminating their parental rights ("TPR" orders). It is instructive to conduct a review of this Court's opinion in Harrison , and to review other opinions addressing the issue of the availability of Anders review when the right to that review is not constitutionally mandated .
In deciding not to extend Anders protections to appeals from TPR orders, this Court in Harrison reasoned: " 'An attorney for a criminal defendant who believes that his client's appeal is without merit is permitted to file what has become known as an Anders brief.' However, this jurisdiction has not extended the procedures and protections afforded in Anders and Kinch to civil cases." Id. at 832, 526 S.E.2d at 502 (citation omitted).[8] In support of our decision not to extend Anders protections to TPR cases, this Court in Harrison noted: "The majority of states who have addressed this issue have found that Anders does not extend to civil cases, including termination of parental rights cases." Id . This Court decided to adopt what it then considered to be the "majority rule," and directly adopted the reasoning from an Arizona opinion, concluding that " 'counsel for a parent appealing from a juvenile court's severance order has no right to file an Anders brief.' " Id. at 833, 526 S.E.2d at 503 (quoting Denise H. v. Arizona Dept. of Economic Sec. , 193 Ariz. 257, 259, 972 P.2d 241, 243 (1998) ). Despite holding that there was no right of Anders review in TPR appeals, this Court in Harrison exercised its discretion and conducted the requested Anders review anyway.[9] Id. Importantly, for our analysis in the present case, in Harrison this Court implicitly recognized that it has the authority to decide whether to extend Anders protections and requirements beyond what is constitutionally mandated . Id .
To the extent that this Court in Harrison included a general holding that we would not extend Anders review to civil cases, two very important facts were thereby established.[10]
*15 First, Harrison and its progeny have always recognized the difference between civil and criminal appeals, and nothing in any of our opinions suggests that Anders related holdings in civil appeals should inform, much less bind, this Court when considering criminal appeals. Harrison itself mainly reaches its holding on the basis that the rights of the appealing parties and the burdens of proof required in termination of parental rights cases, which are civil, are not comparable to those in criminal appeals. Harrison , 136 N.C. App. at 833, 526 S.E.2d at 503 (citation omitted) (" 'the burdens of proof are neither "very similar" nor do they derive from the same source. Because a parent whose rights are terminated is not equivalent to a convicted criminal, we conclude that counsel for a parent appealing from a juvenile court's severance order has no right to file an Anders brief.' "). We can find no case in which an appellate court of this State has denied Anders review in a criminal appeal. The closest we come is in the satellite based monitoring ("SBM") context, where this Court relied on dicta from Harrison to deny Anders review:
[C]ounsel appointed to represent defendant on appeal has filed an Anders brief indicating he "has been unable to identify any non-frivolous issue that could be raised in this appeal." He asks this Court to conduct its own review of the record for possible prejudicial error in accordance with Anders and Kinch . "Our Court has held that SBM hearings and proceedings are not criminal actions, but are instead a 'civil regulatory scheme [.]' " "[T]his jurisdiction has not extended the procedures and protections afforded in Anders and Kinch to civil cases." In re Harrison , 136 N.C. App. 831, 832, 526 S.E.2d 502, 502 (2000). Nevertheless, in the exercise of our discretion pursuant to N.C. R. App. P. Rule 2 (2012), we have reviewed the record and found no error. Consequently, we affirm the trial court's SBM order.
State v. Lineberger , 221 N.C. App. 241, 243, 726 S.E.2d 205, 207 (2012) (citations omitted) (emphasis added). This Court in Lineberger determined it was bound by Harrison because SBM proceedings are civil in nature. Neither Harrison nor any other opinion involving Anders review in civil matters constitutes binding precedent in the criminal matter presently before us.
Second, this Court in Harrison -by the very act of conducting an analysis of the issue, considering the "majority" and "minority" rules from other jurisdictions, and adopting one of those rules-was exercising its authority to make that determination. Put differently, this Court in Harrison could have held that Anders applied in appeals from TPR proceedings, but decided not to. This Court in Harrison did not hold, state, or in any manner indicate that it was without the authority to make that choice absent action by our Supreme Court or our General Assembly . Further, as discussed further below, this Court has held, without any prior "right" created by our Supreme Court or our General Assembly, that the right to effective assistance of counsel-which is only a "right," in the constitutional sense, that applies to criminal defendants-also applies in civil TPR proceedings. In re Oghenekevebe , 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996). This right, in the TPR context, was therefore "created" by this Court, acting alone.
Also of note, this Court, acting without prior permission or guidance from either our Supreme Court or the General Assembly, has held that Anders review applies in appeals from proceedings in which a juvenile has been adjudicated delinquent. In re May , 153 N.C. App. 299, 301, 569 S.E.2d 704, 707 (2002) ("an attorney for an indigent juvenile adjudicated to be delinquent may file an Anders brief in the appellate courts of this state"). Juvenile delinquency proceedings are generally considered civil proceedings. See *16 Turner v. Rogers , 564 U.S. 431, 443, 131 S.Ct. 2507, 2517, 180 L.Ed. 2d 452, 462 (2011) (referring to the "civil juvenile delinquency proceeding"). For this reason, the United States Supreme Court has held that not all constitutional protections required in a criminal proceeding are required in the analogous juvenile proceeding. In re Gault , 387 U.S. 1, 30-31, 87 S.Ct. 1428, 1445, 18 L.Ed.2d 527, 548 (1967) (" 'We do not mean to indicate that the hearing to be held [in a juvenile proceeding] must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.' "); see also In re Winship , 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970).
Post- Harrison , this Court was again asked to extend the Anders procedures to TPR proceedings in N.B., 183 N.C. App. at 117, 644 S.E.2d at 24. After determining that we were bound by the holding in Harrison ,[11] and could not recognize a right that had already been specifically denied by Harrison , this Court stated:
[W]e take this opportunity to urge our Supreme Court or the General Assembly to reconsider this issue. As Respondent's counsel has forcefully argued, an attorney appointed to represent an indigent client whose appeal is wholly frivolous is faced with a conflict between the duty to "zealously assert[ ] the client's position under the rules of the adversary position[,]" N.C. Rules of Professional Conduct, Rule 0.1, and the prohibition on advancing frivolous claims, N.C. Rules of Professional Conduct, Rule 3.1. Further, at the present time, courts in at least thirteen states have allowed attorneys to file no-merit briefs pursuant to Anders in juvenile appeals. See Wis. Stat. § 809.32(1)(a) (requiring appointed counsel to file a "no-merit report" in an appeal of a termination order if the appeal is frivolous); In the Matter of Justina Rose D ., 28 A.D.3d 659, 659, 813 N.Y.S.2d 229, 231 (N.Y. App. 2006) (applying the Anders procedure to an appeal of an order terminating an indigent parent's rights); Linker-Flores v. Dept. of Human Services , 359 Ark. 131, [141], 194 S.W.3d 739, 747 (Ark. 2004) (holding that the Anders procedure correctly balances the rights of indigent parents with the obligations of their appointed attorneys, and adopting the procedure for appeals of termination cases involving indigent parents)[.[12] ] However, other than North Carolina, only four states that have addressed the issue continue to prohibit such a practice. Additionally, permitting such review furthers the stated purposes of our juvenile code. See N.C. Gen. Stat. § 7B-100 (2005).
Id . at 117-19, 644 S.E.2d at 24-25 (citations omitted). Our Supreme Court added a provision to our Rules of Appellate Procedure, effective for all cases appealed after 1 October 2009, allowing an Anders -like procedure for appeals taken pursuant to N.C. Gen. Stat. § 7B-1001, including from TPR orders. N.C. R. App. P. R. 3.1(d).[13] Thus, our Supreme Court has also recognized the authority of our appellate courts, even absent enabling legislation, to decide whether to extend Anders protections into areas, such as determinations of child custody, not constitutionally required by Anders or its progeny-such as Finley . This is in line with other jurisdictions that recognize this authority in their appellate courts. See N.B. , 183 N.C. App. at 117-19, 644 S.E.2d at 24-25 and cases cited therein; see also In re NRL , 344 P.3d 759, 760 (Wyo. 2015) and cases cited.
In the 2015 case of NRL , the Supreme Court of Wyoming noted that the majority of jurisdictions had decided to apply Anders protections to TPR cases, and adopted that majority position. Id. at 760. In so doing, the *17 Court in NRL recognized that, in deciding to extend Anders protections, "many states reasoned that the nature of the case,"
i.e. , civil rather than criminal, makes no difference in the duties court-appointed counsel owes his or her client. From counsel's perspective, counsel's duty to competently and diligently represent the client is exactly the same in a civil appeal from an order terminating parental rights as in an appeal from a criminal conviction. Moreover, in both criminal and termination of parental rights cases, counsel may conclude, after thoroughly and conscientiously examining the case, that a case lacks any nonfrivolous issues for appeal. Despite the civil or criminal nature of the appeal, counsel in such a situation faces the same dilemma of having to diligently represent the indigent client who wants to appeal while still complying with counsel's other ethical duties as a member of the Bar.
Id .
We also find the reasoning of the Texas Court of Appeals, 14th District, instructive:
Although the Texas Supreme Court has not addressed the applicability of Anders to parental-termination appeals, its holdings in two recent cases are instructive. Last year, the Texas Supreme Court held that a Statutory right to effective assistance of counsel exists in parental-rights termination cases. In doing so, our high court extended the Strickland test used in the criminal context to civil parental-rights termination proceedings.[14] The procedure prescribed by the United States Supreme Court in Anders derives from the Sixth Amendment right to counsel. Therefore, it seems logical to conclude that the Texas Supreme Court would allow the filing of an Anders brief derived from this right in the parental-rights termination context.
In re D.E.S. , 135 S.W.3d 326, 329 (Tex. App.-14th Dist. 2004) (citations omitted).
This Court has also recognized that, where a statutory right to counsel exists, that right includes the right to effective assistance of counsel as set forth in Strickland :
N.C. Gen. Stat. § 7A-289.23 (1995) guarantees a parent's right to counsel in all proceedings dedicated to the termination of parental rights. Given that this right exists, it follows that a remedy must also exist to cure violations of this statutory right. If no remedy were provided a parent for inadequate representation, the statutory right to counsel would become an "empty formality." In re Bishop , 92 N.C. App. [662] at 664-65, 375 S.E.2d [676] at 678 [ (1989) ]. "Therefore, the right to counsel provided by G.S. 7A-289.23 includes the right to effective assistance of counsel." Id . at 665, 375 S.E.2d at 678.[15]
Oghenekevebe , 123 N.C. App. at 436, 473 S.E.2d at 396. The Strickland test is the appropriate test to demonstrate ineffective assistance of counsel in North Carolina as well, whether in a criminal or a civil setting. Id. ; State v. Braswell , 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985). N.C.G.S. § 15A-270.1 provides a statutory right to counsel, and thus the right to effective assistance of counsel as set forth in the Sixth Amendment based Strickland / Braswell test. We see no valid reason to deny Anders -type protections to defendants in criminal proceedings from which there is a statutory right of appeal, and can discern no compelling reason why this Court, or the State, would find it desirable to place appointed counsel in the position of choosing "between the duty to 'zealously assert[ ] the client's position under the rules of the adversary position[,]' N.C. Rules of Professional Conduct, Rule 0.1, and the prohibition on advancing frivolous claims, N.C. Rules of Professional Conduct, Rule 3.1." N.B. , 183 N.C. App. at 117, 644 S.E.2d at 24.
We find the decision to apply Anders procedures to appeals pursuant to N.C.G.S. § 15A-270.1 even more compelling in light of this Court's recent opinion in Sayre . In *18 Sayre , the defendant's counsel filed an Anders brief stating he could find no meritorious issues for appeal. Sayre , --- N.C. App. ----, 803 S.E.2d 699, 2017 WL 3480951, *1 (2017). The defendant filed a pro se brief pursuant to Anders , and this Court conducted the appropriate review. Id . The majority affirmed, holding: "We have been unable to find any possible prejudicial error, and we conclude that the appeal is wholly frivolous." Id . at *2. Judge Murphy dissented, stating: "I respectfully dissent from the Majority's opinion because [the d]efendant made allegations sufficient under the plain language of the statute entitling him to the appointment of counsel to maintain his motion for post-conviction DNA testing." Id . at *4. Sayre is currently awaiting review by our Supreme Court. Absent this Court's decision to conduct an Anders review in Sayre , the defendant would not have had the opportunity to present his possibly meritorious argument once his counsel determined that he could not locate any non-frivolous arguments based upon the record before him.
In the present matter, the concurring opinion, relying on N.C.R. App. P. 28, argues that we should not address the Anders issue in this opinion because it was not first brought up and argued in Defendant's brief. We believe the fact that Defendant's attorney filed an Anders brief is sufficient to raise the issue and present it for appellate review. Further, the State's sole argument on appeal is that we should dismiss Defendant's appeal based on a determination that Anders review cannot be requested in an appeal pursuant to N.C.G.S. § 15A-270.1. The concurring opinion would have us refuse to address the State's argument on appeal. If this Court was to refuse to address the State's argument, our remaining option for review would be to simply conduct the requested Anders review, just as we have done in every prior appeal that requested Anders review pursuant to N.C.G.S. § 15A-270.1. However, the concurring opinion implicitly argues that we should conduct the review, but only to the point where we determine Anders review is not constitutionally mandated on appeal pursuant to N.C.G.S. § 15A-270.1, and then use our discretionary supervisory powers to conduct an Anders review in this case, without making any broader holding. As stated, we believe Defendant's brief requesting Anders review and the State's brief contending that we cannot apply Anders review to this appeal place this issue squarely before us and meet the requirements of Rule 28. Assuming, arguendo , this issue was not preserved for appellate review, in light of Defendant's clear reliance on the precedent of this Court in conducting Anders review, without reservation, whenever it has been asked to do so on appeal pursuant to N.C.G.S. § 15A-270.1, we invoke Rule 2 of our Rules of Appellate Procedure to "suspend or vary the requirements" of Rule 28 in order to "prevent manifest injustice" and "expedite decision in the public interest," N.C.R. App. P. 2, address the State's sole argument in opposition to Defendant's appeal, and settle a question of law that would be certain to otherwise recur.
Our precedent establishes that this Court has both jurisdiction and the authority to decide whether Anders -type review should be prohibited, allowed, or required in appeals from N.C.G.S. § 15A-270.1. Exercising this discretionary authority, we hold that Anders procedures apply to appeals pursuant to N.C.G.S. § 15A-270.1. We wish to make clear, in order to avoid potential misapplication, that our holding is limited to the issue before us-appeal pursuant to N.C.G.S. § 15A-270.1. Having held that Defendant's counsel had the right to proceed in this matter pursuant to Anders procedures, we now address the merits of Defendant's arguments.
B. Anders Review
"Under our review pursuant to Anders and Kinch , 'we must determine from a full examination of all the proceedings whether the appeal is wholly frivolous.' " State v. Frink , 177 N.C. App. 144, 145, 627 S.E.2d 472, 473 (2006) (citation omitted). "In carrying out this duty, we will review the legal points appearing in the record, transcript, and briefs, not for the purpose of determining their merits (if any) but to determine whether they are wholly frivolous." Id . (citation omitted).
Based on our review, we agree with counsel that the appeal is wholly frivolous.
*19 Defendant asserts he did not act with premeditation and deliberation in killing Ms. Barefoot; nor did he "c[o]me to Ms. Barefoot's apartment with an intent to commit a felony therein." Defendant's averments bear no relation to the integrity of the DNA evidence presented at his trial or to the potential value of additional testing. Thus, they are not relevant to the issue currently before this Court: whether the trial court erred in denying Defendant's motion to locate and preserve evidence and for postconviction DNA testing under N.C.G.S. § 15A-269. Defendant's argument is also wholly at odds with the theory presented in his motion to the trial court, i.e. , that further DNA testing would prove he was not the perpetrator of the crime. We note on that account that Defendant has not demonstrated how, based upon the facts of this case, DNA testing could possibly assist him in any post-conviction review. Accordingly, we affirm the trial court's order.
AFFIRMED.
Judge CALABRIA concurs.
Judge DILLON concurs with separate opinion.

While the order spells Defendant's name as "Valasquez-Cardenas, we use the spelling of Defendant's name as reflected in the indictment and in Defendant's pro se Notice of Appeal and Defendant's other pro se filings in the record.

The State makes this same argument in two additional appeals currently before this Court, State v. Ross , COA17-442, and State v. Tapia , COA17-471, the decisions of which we file concurrently with this opinion.

Absent federal preemption.

As noted below, our Supreme Court has decided to afford Anders -type review to certain civil proceedings pursuant to Rule 3.1(d) of the North Carolina Rules of Civil Procedure.

Chapter 15A is, of course, the Criminal Procedure Act.

"Rule 4. Appeal in Criminal Cases-How and When Taken" is the rule of appellate procedure that applies to criminal appeals. N.C.R. App. P. 4(a). If appeal from N.C.G.S. § 15A-270.1 was an appeal from a civil proceeding, we would apply Rule 3. N.C.R. App. P. 3.

Oral notice of appeal is only valid in an appeal from a criminal proceeding.

It is important to note that the language in Harrison stating that Anders protections have not been extended to civil cases is not a holding-it is a statement of fact made to introduce this Court's subsequent analysis. Unfortunately, this language has been cited in some subsequent opinions as if it constituted binding precedent.

We note that in a number of opinions in which this Court determined Anders did not apply, this Court, in its discretion, still conducted the requested Anders review. This Court's authority to conduct Anders review in those cases was never challenged.

Although the holding in Harrison has been characterized as one denying Anders review in civil cases, see In re N.B., N.B., J.B., N.B., & J.B. , 183 N.C. App. 114, 116-17, 644 S.E.2d 22, 24 (2007) ("[i]n Harrison , this Court declined to extend the holding of Anders to civil cases, including termination of parental rights cases"), this Court in Harrison was specifically considering a termination of parental rights case, and it specifically adopted the reasoning of an Arizona case in support of its holding. The Arizona case was also limited to a termination of parental rights proceeding, and the portion of that opinion quoted and adopted in Harrison does not make any holding broader than that counsel for parents appealing an order terminating their parental rights have "no right to file an Anders brief." Harrison , 136 N.C. App. at 833, 526 S.E.2d at 503 (citation omitted). It is unclear that the holding in Harrison was intended to be applied outside the termination of parental rights context.

In the Matter of Appeal from Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

Following these three citations, N.B. includes ten more citations to opinions from different jurisdictions that affirmed or granted Anders review in TPR appeals.

We can find nothing in our Rules of Appellate Procedure that would prevent us from allowing Anders -type review in the matter before us. Further, our Supreme Court has repeatedly stated its preference that appeals be decided on the merits, and not be dismissed for non-jurisdictional rules violations. Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co. , 362 N.C. 191, 198-99, 657 S.E.2d 361, 365-66 (2008).

Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).

We point out that in Bishop , this Court for the first time recognized a right to effective assistance of counsel in termination proceedings, and imposed the Strickland /Braswell test, even though this right is not constitutionally mandated.